IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IN RE: VAN T. VU                    :
_____

ELENA POPE, et al.                  :

      Appellants               :

      v.                       : Civil Action No. DKC 2007-0116

                      :

VAN T. VU

                      :

      Appellee                 :

                      :

**MEMORANDUM OPINION**

Presently pending is an appeal by objecting creditors Ann Balcerzak, Thomas Tsianakas, Ioanna Tsianakas, Hoang Nguyen, and Elena Pope ("Creditors") challenging the December 19, 2006 Order entered by Judge Thomas J. Catliota of the United States Bankruptcy Court for the District of Maryland. Oral argument is deemed unnecessary because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. *See* Fed.R.Bankr.P. 8012. For the reasons that follow, the court will affirm the bankruptcy court's Order.

## I.  Background

Debtor Van T. Vu filed a voluntary Chapter 11 bankruptcy petition on July 22, 2004. As the case progressed, it came to light that Debtor had participated in a real estate business with her sister Minh-Vu Hoang and other members of her family, some of

whom had earlier declared bankruptcy.  Debtor's primary counsel, David E. Lynn, moved to employ Linda D. Regenhardt as additional counsel in June 2006 when it became clear that the trustee appointed in Minh-Vu Hoang's bankruptcy case intended to file a motion for substantive consolidation of Debtor's bankruptcy estate into the Minh-Vu Hoang estate.  The bankruptcy court approved the motion to hire additional counsel on July 10, 2006.

The  Minh-Vu Hoang trustee filed a motion to substantively consolidate along with accompanying exhibits on August 18, 2006 (Paper 1, Exs. 22-100).[1]  The motion asserted that many of the assets claimed by Debtor as part of her estate were actually titled in the name of other entities, and that Minh-Vu Hoang's bankruptcy estate had a superior claim to the ownership of these properties. Debtor had admitted at the meeting of her creditors that Minh-Vu Hoang had arranged her real estate investments and provided entity names under which to title these properties.  She also admitted that she purchased some properties on behalf of Minh-Vu Hoang, but insisted that at least some of the properties claimed in her bankruptcy estate had been purchased with funds she had borrowed from family members.  (Paper 8, at 17-19, 24-25).  On August 29, 2006, the United States Trustee, W. Clarkson McDow, Jr., filed a motion to convert Debtor's Chapter 11 bankruptcy case to a

---

[1]  A motion for substantive consolidation was also filed by Creditors, but was not pursued to the same extent as the motion filed by the Minh-Vu Hoang trustee.

liquidation proceeding under Chapter 7.  This motion was based on an assertion that Debtor had made unauthorized payments to some of her creditors from her bankruptcy estate.

On November 17, 2006 , Debtor, the Minh-Vu Hoang trustee, and the United States Trustee entered into an agreement (the "Settlement Agreement") under which Debtor agreed to transfer her interest in most of the property claimed in her bankruptcy estate into the Minh-Vu Hoang bankruptcy estate, without admitting that she had not had a valid claim to ownership of the property.  Debtor also agreed that she would not receive a discharge in her bankruptcy proceeding.  The Minh-Vu Hoang trustee agreed that any professional fees approved by the bankruptcy court in connection with Debtor's bankruptcy proceeding would be paid from the Minh-Vu Hoang bankruptcy estate.  The Settlement Agreement was confirmed by the bankruptcy court by Order entered December 22, 2006.  (Paper 1, Ex. 174).

In October 2006, Debtor's counsel applied for payment of their fees for services rendered in connection with Debtor's bankruptcy case.  Ms. Regenhardt's application indicated that her services were primarily directed toward defending against the motion for substantive consolidation and the motion to convert to Chapter 7. Creditors initially challenged the fee applications of both Mr. Lynn and Ms. Regenhardt, but at an oral hearing held on December 15, 2006, withdrew their objection to Mr. Lynn's fee application.

Creditors argued that Ms. Regenhardt's services did not confer a benefit for Debtor's bankruptcy estate and that the fees requested were unreasonable.  At the hearing, the bankruptcy court determined that the services rendered by both Mr. Lynn and Ms. Regenhardt were reasonable and necessary expenses, and that the hours and fees submitted were reasonable.  (Paper 6, Ex. 1, at 49-55).  The bankruptcy court also found that at the time both attorneys provided services to the estate it was reasonably likely that the services would benefit the estate.  (*Id.* at 53-54).  By Order entered December 20, 2006, the bankruptcy court approved the fee requests submitted by Debtor's counsel in full.  (Paper 6, Ex. 2).  Creditors have appealed the bankruptcy court's Order.

## II.  Standard of Review

On appeal from the bankruptcy court, the district court acts as an appellate court and reviews the bankruptcy court's findings of fact for clear error and conclusions of law *de novo*.  *See In re Official Comm. of Unsecured for Dornier Aviation (N. Am.), Inc.*, 453 F.3d 225, 231 (4th Cir. 2006) (citing *In re Johnson*, 960 F.2d 396, 399 (4th Cir. 1992)); *In re Bryson Props., XVIII*, 961 F.2d 496, 499 (4th Cir.), *cert. denied*, 506 U.S. 866 (1992).

## III.  Standing

Debtor argues that Creditors lack standing to challenge the bankruptcy court's Order.  "The test for standing to appeal a bankruptcy court's order to the district court is well-established:

4

the appellant must be a person aggrieved by the bankruptcy order.
. . . Likewise, it is well-established that a person aggrieved is
'a party 'directly and adversely affected pecuniarily.''" *White v.
Univision of Va., Inc. (In re Urban Broadcasting Corp.)*, 401 F.3d
236, 243-44 (4th Cir.) (quoting *United States Tr. v. Clark (In re
Clark)*, 927 F.2d 793, 795 (4th Cir. 1991) (quoting *Fondiller v.
Robertson (In re Fondiller)*, 707 F.2d 441, 442 (9th Cir. 1983))),
*cert. denied*, 126 S.Ct. 379 (2005). Although a bankruptcy estate's
creditors are not directly and adversely affected pecuniarily by
any order affecting the bankruptcy estate, a creditor "ha[s] a
direct pecuniary interest in a bankruptcy court's order
transferring assets of the estate." *Duckor Spradling & Metzger v.
Baum Trust (In re P.R.T.C., Inc.)*, 177 F.3d 774, 778 (9th Cir.
1999), *cited in* 1 Collier On Bankruptcy ¶ 5.06 (15th ed. rev. 2006).

Creditors have each asserted claims against the bankruptcy
estate of Minh-Vu Hoang.[2]  Pursuant to the Settlement Agreement,
Debtor's assets were transferred into the Minh-Vu Hoang bankruptcy
estate, and will be available to the trustee of that bankruptcy
estate for payment to creditors.  The Settlement Agreement and the
associated addendum to that agreement, however, also provide that
any attorney's fees approved by the bankruptcy court in Debtor's

---

[2] Elena Pope has also filed a proof of claim in Debtor's
bankruptcy case, although Debtor argues that this claim has been
paid in full.  This dispute is immaterial because Creditors' claims
against the Minh-Vu Hoang bankruptcy estate confer standing under
the circumstances of this case.

case are to be paid by the trustee of the Minh-Vu Hoang estate, which received the bulk of Debtor's previously claimed assets under the settlement agreement.[3]   As a result of this agreement, the funds available to pay Creditors' claims will be directly reduced by the payments to Gary & Regenhardt, P.L.L.C. authorized by the challenged Order.   Accordingly, Creditors are persons aggrieved by the bankruptcy court's Order.

## IV.  Fee Application

Creditors argue that the services provided by Ms. Regenhardt did not benefit Debtor's bankruptcy estate, that Ms. Regenhardt failed to exercise billing judgment, and that Ms. Regenhardt's fee request is unreasonable in light of the results obtained through her services.

## A.  Benefit to the Estate

Payment from the bankruptcy estate for fees for professional services, including attorney's fees incurred by a Chapter 11 debtor

---

[3]  The Settlement Agreement was not designated a part of the record on appeal by either party, apparently because neither party considered it relevant.   Nonetheless, Creditors rely on the Settlement Agreement, which is attached as exhibit 1 to paper 308 on of the bankruptcy court's docket in this case, to establish their standing to pursue this appeal.   Amended paragraph 13(b) of the Settlement Agreement provides:

> The Trustee hereby agrees to pay from the estates in the Minh Cases all professional fees of counsel for the Debtor as are approved by final, non-appealable Order(s) of the Court following proper application by said counsel, notice and opportunity to object; all pursuant to the provisions of the Bankruptcy Code and Rules of Procedure.

6

in possession, are authorized, under certain circumstances, as set out in 11 U.S.C. § 330.[4]  Subsection 330(a)(1) authorizes the bankruptcy court to award, from a bankruptcy estate, "reasonable compensation for actual, necessary services rendered by [a] . . . professional person[] or attorney and by any paraprofessional person employed by any such person; and reimbursement for actual, necessary expenses."  Pursuant to § 330(a)(3):

> In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including--
> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

---

[4] Section 330 authorizes, among other things, fee awards for a professional person, including an attorney, when that professional person is employed under 11 U.S.C. § 327.  Section 327, in turn, allows a trustee to hire professionals, including attorneys.  Pursuant to 11 U.S.C. § 1107, a Chapter 11 debtor in possession, such as Debtor in this case, exercises the same powers that would be available to a trustee, implicitly including the power under § 327 to employ an attorney whose fees may be compensable from the estate to the extent allowed by § 330.  *See Andrews & Kurth L.L.P. v. Family Snacks, Inc. (In re Pro-Snax Distribs., Inc.)*, 157 F.3d 414, 421-22 (5th Cir. 1998).

> (F) whether the compensation is reasonable
> based on the customary compensation charged by
> comparably skilled practitioners in cases
> other than cases under this title.

An additional limiting provision is set out in § 330(a)(4)(A), requiring that "the court shall not allow compensation for-- unnecessary duplication of services; or services that were not-- reasonably likely to benefit the debtor's estate; or necessary to the administration of the case."

Courts have reached different conclusions as to the proper construction of the requirement that an attorney's services benefit the bankruptcy estate under § 330(a)(3)(C)&(4)(A)(ii)(I).  The United States Court of Appeals for the Fourth Circuit has not yet addressed this question.  The Second Circuit has held that § 330 imposes an objective test "based upon what services a reasonable lawyer or legal firm would have performed in the same circumstances."  *In re Ames Dep't Stores, Inc.*, 76 F.3d 66, 72 (2[d] Cir. 1996) (citing *In re Taxman Clothing Co.*, 49 F.3d 310, 315 (7th Cir. 1995)), *overruled on other grounds by Lamie v. United States Tr.*, 540 U.S. 526 (2004).  *See generally* 3 *Collier on Bankruptcy* ¶ 330.04(1)(b)(iv) (15th ed. rev. 2006) ("[T]he 'reasonably likely to benefit the estate' test should be applied in an objective manner, based upon the services a reasonable lawyer would have performed in the same circumstances.").  The Fifth Circuit, however, has held that the services must have actually "resulted in an identifiable, tangible, and material benefit to the bankruptcy estate." *Andrews*

& Kurth L.L.P. v. Family Snacks, Inc. (In re Pro-Snax Distribs., Inc.), 157 F.3d 414, 426 (5th Cir. 1998). A Bankruptcy Appellate Panel for the Ninth Circuit has since considered the approaches adopted by *Ames* and *Andrews & Kurth*, and has adopted the Second Circuit's approach, holding that § 330 "does not require that the services result in a material benefit to the estate in order for the professional to be compensated; the applicant must demonstrate only that the services were 'reasonably likely' to benefit the estate at the time the services were rendered." *Roberts, Sheridan & Kotel, P.C. v. Bergen Brunswig Drug Co. (In re MEDNET, MPC Corp.)*, 251 B.R. 103, 108 (B.A.P. 9th Cir. 2000).

Creditors contend that the Fifth Circuit's construction of § 330 is superior and should be adopted by this court. "Under the most basic canon of statutory construction, [a court] begin[s] interpreting a statute by examining the literal and plain language of the statute. . . . Absent explicit legislative intent to the contrary, the statute should be construed according to its plain and ordinary meaning." *Carbon Fuel Co. v. USX Corp.*, 100 F.3d 1124, 1133 (4th Cir. 1996) (citing *Williams v. United States Merit Sys. Protection Bd.*, 15 F.3d 46, 49 (4th Cir. 1994); *United States v. Allen*, 2 F.3d 538, 539 (4th Cir. 1993)). In *Roberts*, the Ninth Circuit Bankruptcy Appellate Panel reviewed the constructions of § 330 adopted by the Second and Fifth circuits, and concluded that the Fifth Circuit's interpretation in *Andrews & Kurth* was not

supported by either the text of § 330 or sound policy.  The *Roberts*
court persuasively explained its rational for adopting the approach
of the Second Circuit and the authors of *Collier on Bankruptcy*:

> The Fifth Circuit reasoning that a
> professional's services are only compensable
> if they result in a material benefit to the
> estate does not comport with a strict reading
> of the statute.  Section 330 clearly states
> that (1) services are compensable if they were
> "necessary ... or beneficial at the time at
> which the service was rendered," and (2)
> services should not be compensable if they
> were not "reasonably likely to benefit the
> debtor's estate." § 330(a)(3)(A)(C) and
> (a)(4)(A)(ii)(I).  The statute does not
> require that the services result in a material
> benefit to the estate in order for the
> professional to be compensated; the applicant
> must demonstrate only that the services were
> "reasonably likely" to benefit the estate at
> the time the services were rendered.  The
> statute is clear and unambiguous.  In our
> view, the Fifth Circuit's reading of the
> statute does not comport with the clear
> meaning of the 1994 amendments, would
> unreasonably restrict legitimate professional
> efforts toward effective estate
> administration, and could well cause attorneys
> to shy away from work that might benefit the
> estate.

*Roberts*, 251 B.R. at 108.  This construction is consistent with the
plain and ordinary meaning of the language of § 330(a)(3)(C)
requiring analysis of the benefit conferred by the services "at the
time at which the service was rendered" and with the language of §
330(a)(4) barring an award of fees if the services were not
"reasonably likely to benefit the debtor's estate."  This language
unambiguously requires consideration of whether, at the time the

services were rendered, a reasonable attorney would have believed that they would benefit the estate, rather than a subsequent consideration of the practical effects actually achieved by an attorney's services.

Creditors assert that the bankruptcy court misstated the legal standard for analyzing benefit to the estate by requiring only a showing that Ms. Regenhardt had a good faith belief that her services would benefit the estate, rather than requiring that such a belief be reasonable.  The bankruptcy court articulated the following legal standard applicable to a determination with respect to benefit to the estate:

> "I don't look at those decisions in hindsight with 20/20 in light of how the matter was resolved or was settled.  You look at them as to what were the decisions being made at the time and at the time those decisions were proper, were entirely proper decisions to protect the interest of the estate as the professional persons understood them at the time."

(Paper 6, Ex. 1, at 54).  While the bankruptcy court's oral statement did not expressly indicate that it had engaged in an objective inquiry, the bankruptcy court explicitly found that Ms. Regenhardt's belief that her services would benefit the estate reflected "entirely proper decisions to protect the interest of the estate."  Thus, the bankruptcy court properly determined that, viewed objectively, "the services were 'reasonably likely' to

benefit the estate at the time the services were rendered." *Roberts*, 251 B.R. at 108.

Creditors also claim that the record does not support the bankruptcy court's conclusion that Ms. Regenhardt's application for attorney's fees should be granted. Creditors particularly challenge the bankruptcy court's conclusion that Ms. Regenhardt's services were reasonably likely to benefit the estate at the time they were rendered. A bankruptcy court's findings of fact are generally reviewed by a district court only for clear error. *In re Official Comm. of Unsecured for Dornier Aviation (N. Am.), Inc.*, 453 F.3d at 231. More specifically, courts have held that a bankruptcy court's finding that an attorney's services were reasonably likely to benefit the estate at the time they were rendered, "is reviewed under a clearly erroneous standard." *Dye v. Sandman Assocs., L.L.C. (In re Sandman Assocs. L.L.C.)*, 251 B.R. 473, 484 (W.D.Va. 2000) (citing *Anderson v. Anderson (In re Anderson)*, 936 F.2d 199, 203 (5th Cir. 1991)).

The bankruptcy court thoroughly considered the issue of whether Ms. Regenhardt's services could have been reasonably expected to benefit the estate, finding as follows:

> With respect to whether or not this was a benefit to the estate, up until the settlement the Van Vu estate was a bankruptcy estate entitled to the exact same consideration that any other bankruptcy estate would be entitled to. Ms. Regenhardt . . . represented the estate and represented the creditors in an

entirely appropriate way.  Obviously I
witnessed that.
. . . [T]he best interest of the estate
as far as Van T. Vu and her professional
parties were concerned was to challenge the
motion to convert which would have resulted in
the complete liquidation of the estate and to
challenge the substantive consolidation which
would have resulted in all assets of that
estate being transferred to Minh Vu Hoang's
estate and therefore the elimination of the
estate.
So it clearly was a benefit to the estate
at the time.  I don't look at those decisions
in hindsight with 20/20 in light of how the
matter was resolved or was settled.  You look
at them as to what were the decisions being
made at the time and at the time those
decisions were proper, were entirely proper
decisions to protect the interest of the
estate as the professional persons understood
them at the time.

(Paper 6, Ex. 1, at 53-54).

Creditors assert that Ms. Regenhardt should have known at the

time her services were rendered that reorganization was impossible

because either the motion to substantively consolidate, the motion

to convert to Chapter 7, or both motions would inevitably be

granted.  Creditors claim that each motion was supported by

significant evidence, and argue that, although Debtor contested

some of these facts and contested the legal conclusions asserted in

the motions, Debtor's contentions were frivolous.

Debtor admitted at the meeting of creditors held on September

2, 2005 that she had been involved in a series of complex

transactions orchestrated by her sister, Minh-Vu Hoang.  Creditors

assert that forensic accounting detailed in the motion for

substantive consolidation and associated exhibits reveals that some of the assets claimed by Debtor but titled under the names of other entities were traceable to funds controlled by Minh-Vu Hoang. (*See* paper 1, Ex. 22, at 6-23). Debtor admitted that she bought and sold properties, sometimes on behalf of Minh-Vu Hoang and Debtor's brother-in-law, but insisted that some of these properties were purchased with her own funds, separately borrowed from other relatives. (Paper 8, at 17-19, 24-25). Creditors stress that Debtor admitted that some of the assets she claimed were legally titled in the names of entities that Minh-Vu Hoang had used to hold property. Debtor claimed to have bought and sold property in the name of many of the same entities, but insisted that at least some of these assets reflected her own investments, although she admitted she did not have precise records of her share of ownership in individual properties or entities. (Paper 8, at 23-25).

Creditors also contend that the Settlement Agreement amounted to capitulation by Debtor, and that it should give rise to an inference that Debtor's claims to property listed on her bankruptcy schedules had been frivolous. The Settlement Agreement expressly avoids any admission by Debtor along these lines, and even if it could give rise to such an inference, the subsequent Settlement Agreement does not support a conclusion that Ms. Regenhardt's services were not reasonably likely to benefit the estate at the time those services were rendered. Creditors also note that Debtor

considered asserting her Fifth Amendment rights, that she and her family may be under a criminal investigation, and that Minh-Vu Hoang and her husband have exercised their Fifth Amendment rights. Although a negative implication can arise in bankruptcy proceedings based on a debtor's assertion of her right to remain silent, the assertion of this right by Debtor's family does not indicate the extent of Debtor's interest in individual assets or entities. Likewise, Debtor's consideration of asserting her Fifth Amendment rights and the possibility of a criminal investigation are insufficient to give rise to a negative inference as to the extent of Debtor's interest in property transactions orchestrated by her sister.

Although, as Creditors point out, the motion for substantive consolidation was supported by significant evidence that Debtors' assets had been commingled with those of her sister, Debtor asserted contrary facts indicating that some of the assets she claimed properly belonged within her bankruptcy estate.   The bankruptcy court noted the complexity of the underlying financial transactions relevant to the motion for substantive consolidation. In addition, limited records regarding the transactions and the entities involved were available.  Considering the circumstances of rapidly unfolding litigation, the late stage at which Ms. Regenhardt became involved in the case, and the intensive nature of a substantive consolidation claim, as the bankruptcy court did,

Creditors are not correct in asserting that Debtor's counsel were required to accept their and the Minh-Vu Hoang trustee's version of the facts.   Given the convoluted financial transactions that had occurred, the bankruptcy court's finding, that Ms. Regenhardt's continued services were justified by a reasonable objective likelihood of successfully defending against substantive consolidation, was not clearly erroneous.

Likewise, the evidence of Debtor's allegedly wrongful conduct submitted in support of the United States Trustee's motion to convert the case to a Chapter 7 proceeding was not sufficient to require Ms. Regenhardt to conclude that conversion to Chapter 7 would be inevitable, nor to render the bankruptcy court's contrary finding clearly erroneous.   The United States Trustee had asserted that Debtor made unauthorized payments to creditors and failed to report her interests in partnerships including Madison Plus LLC. (*See* Paper 1, Ex. 107, at 2-3; *id*., Ex. 114).   At the creditors meeting, soon after filing her Chapter 11 bankruptcy petition, Debtor admitted that she did not fully understand her own financial affairs, that transactions she had executed had often been designed by her sister, and that she did not have a clear understanding of which entities she had an interest in.  (Paper 8, at 19-24, 37-38). Debtor also responded to the motion to convert by arguing that she believed any interest in these entities belonged to her ex-husband. Although Debtor failed to reveal her legal title to these entities,

16

the evidence cited by Creditors is not sufficient to show that the bankruptcy court's conclusion was clearly erroneous.

Creditors contend that the services provided by Ms. Regenhardt could not have been reasonably expected to benefit the estate because, they allege, Debtor filed this bankruptcy case with the improper purpose of contesting debts to her non-family members and arranging a partial settlement with a significant judgment creditor.[5]  The bankruptcy court rejected this argument, finding that Ms. Regenhardt's services in contesting the motions for substantive consolidation and conversion to Chapter 7 benefitted the estate and the creditors of Debtor's estate because these efforts sought to preserve the estate's assets from distribution to creditors of other estates and sought to successfully reorganize the estate's assets to achieve greater value.  (Paper 6, Ex. 1, at 53-54).  The fact that Debtor contested many of the debts not held by her family members is insufficient to render this finding clearly erroneous.

**B.  Billing Judgment**

Creditors argue that Ms. Regenhardt's fee application should be denied in its entirety for failure to exercise billing judgment.

---

[5]  Debtor argues that Creditors failed to preserve this argument for appeal because it was not raised before the bankruptcy court.  While it appears that Creditors may have adequately raised this issue below, it is unnecessary to resolve this dispute because, even if it was adequately preserved, Creditors' argument does not justify reversal of the bankruptcy court's Order.

They contend that billing judgment is a requirement of any attorney fee award, and that proper billing judgment always requires an attorney to exclude from a fee application some percentage of the time spent on that case.  The Supreme Court of the United States, in considering attorney's fee awards in other contexts has explained that:

> [c]ounsel . . . should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.  "In the private sector, 'billing judgment' is an important component in fee setting.  It is no less important here.  Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority."

*Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (citing *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C.Cir. 1980)).  "The exercise of billing judgment is the voluntary reduction of a fee by counsel to a private client for services [that] either conferred a negligible benefit or were excessive. . . .  Such billing judgment is an absolute requirement of fee applications in bankruptcy."  *In re Maxine's, Inc.*, 304 B.R. 245, 249 (Bankr.D.Md. 2003) (citing *In re Leonard Jed*, 103 B.R. 706, 713 (Bankr.D.Md. 1989); *In re Bernard Hill, Inc.*, 133 B.R. 61, 62 (Bankr.D.Md. 1991)).

Creditors argue that a fee application indicating that no hours have been written-off should necessarily be denied or reduced, but this argument is without merit.  While "billing

judgment is an absolute requirement of fee applications in bankruptcy[,]" *id.*, the exercise of sound billing judgment requires the voluntary reduction of fees only when those fees would otherwise reflect services of marginal value or benefit. *See id.* (concluding that a reduction in the fee award for failure to exercise billing judgment was proper because "most of counsel's services conferred absolutely no benefit upon the debtor"). As a result, it would be improper to deny a fee request automatically because the fee was not voluntarily reduced. To the extent that Creditors also assert that some or all of the services rendered by Ms. Regenhardt provided so little benefit to the estate that it was unreasonable not to voluntarily reduce the fee sought, this argument is subsumed by Creditors' argument that the fee sought by Debtor's counsel is unreasonable in light of the results obtained. These arguments will be addressed simultaneously.

**C.  Reasonable Fees**

Creditors argue that the Ms. Regenhardt's fee application was unreasonable and should not have been approved by the bankruptcy court. An application for attorney's fees in a bankruptcy case, as in other cases, is analyzed under a hybrid of the lodestar analysis and a twelve factor test.

> It is well established in the Fourth Circuit that attorney's fees are evaluated by the lodestar method, under which various factors are applied to determine the attorney's reasonable rate and the reasonable number of hours. *EEOC v. Serv. News Co.*, 898 F.2d 958

19

> (4th Cir. 1990); *In re Great Sweats, Inc.*, 113
> B.R. 240, 241 (Bankr.E.D.Va. 1990) (noting
> that the Fourth Circuit utilizes a "hybrid of
> the lodestar and 12-factor tests").  The
> lodestar figure is the product of reasonable
> hours and a reasonable rate.  *In re Great
> Sweats, Inc.*, 113 B.R. at 242.  The burden of
> proof as to the reasonableness of the
> requested compensation rests with the
> applicant.  *Id.*  Indeed, "[t]he Court is not
> required to adopt the number of hours
> submitted by an attorney in his fee
> application, but may make an independent
> determination of the reasonableness of hours
> devoted to the case."  *Id.*

*Boleman Law Firm, P.C. v. United States Tr.*, 355 B.R. 548, 552-53

(E.D.Va. 2006).  In addition to the lodestar analysis, courts also

consider the following twelve factors:

> (1) the time and labor expended;
> (2) the novelty and difficulty of the question
> raised;
> (3) the skill required to properly perform the
> legal services rendered;
> (4) the attorney's opportunity costs in
> pressing the instant litigation;
> (5) the customary fee for like work;
> (6) the attorney's expectations at the outset
> of the litigation;
> (7) the time limitations imposed by the client
> or circumstances;
> (8) the amount in controversy and the results
> obtained;
> (9) the experience, reputation and ability of
> the attorney;
> (10) the undesirability of the case within the
> legal community in which the suit arose;
> (11) the nature and length of the professional
> relationship between attorney and client; and
> (12) attorney's fees awards in similar cases.

*Id.*, at 553 n.2 (citing *Barber v. Kimbrell's, Inc.*, 577 F.2d 216

(4th Cir. 1978)).

20

Creditors argue that the fee request submitted by Debtor's counsel is unreasonable and should be denied. Creditors contend that the most important factor in addressing whether a fee request is reasonable is the result actually obtained by counsel's services, and Creditors assert that Ms. Regenhardt's services resulted in no actual benefit to the estate. Thus, they contend, any fee award is unreasonable, and the bankruptcy court's contrary finding was clearly erroneous.

A court considering an award of attorney's fees must consider all twelve of the *Johnson* factors, and must weigh any factors that are relevant to the determination of the appropriate fee award in an individual case. *See Equal Employment Opportunity Comm'n v. Service News Co.*, 898 F.2d 958, 965 (4th Cir. 1990). Creditors' assertion that no fee is appropriate for an attorney who does not ultimately prevail in a bankruptcy action cannot be correct, because such a rule would routinely make attorneys for a debtor in possession in a bankruptcy case guarantors of the debtor's success. The Supreme Court of the United States has observed that, in the context of fee awards authorized under 42 U.S.C. § 1988, which allows a fee award only to a prevailing plaintiff, when a plaintiff prevails only in part or only as to some claims, the degree of success is particularly important in determining a reasonable fee. *Hensley*, 461 U.S. at 434. This rule, however, stems from the requirement under § 1988 that a plaintiff prevail in order to

21

obtain a fee award. Success is not required for a fee award otherwise authorized under 11 U.S.C. § 330. As discussed above, the benefit to the estate requirement under § 330 requires only that a reasonable attorney would have believed that the services were reasonably likely to benefit the estate at the time they were rendered. *See Ames*, 76 F.3d at 72; *Roberts*, 251 B.R. at 108.

The bankruptcy court considered the correct factors, and determined that the fees requested by Debtor's counsel were reasonable in light of those factors under the lodestar framework. (Paper 6, Ex. 1, at 49-55). The court found of particular relevance to this case that Ms. Regenhardt was presented with an unusually challenging litigation schedule and tight deadlines after starting work in the middle of ongoing litigation. In addition, the bankruptcy court found that the litigation regarding the motions for substantive consolidation and the motion to convert to Chapter 7 were difficult and fact-intensive legal issues, and that this complexity was compounded by complicated facts associated with the convoluted financial transactions that had occurred in the case. In light of these factors, the court determined that the amount of time expended by Debtor's counsel was reasonable and necessary:

> This was a heavily contested, very difficult case from the time Ms. Regenhardt and her law firm became involved in it. Ms. Regenhardt stepped into what I think would be characterized in the vernacular as a hornet's nest. . . .

. . .

Substantive consolidation is an intensely factual, intensive claim that requires a substantial amount of factual analysis and a substantial amount of legal analysis.  In the short period of time when Ms. Regenhardt was in this case, she was required to receive and review -- or prepare to receive and review . . . the motion for substantive consolidation, to respond to the motion to convert the case which has been filed by the U.S. Trustee. . . .

. . . Ms. Regenhardt and Mr. Lynn required an extremely difficult time table to prepare to respond to [these motions]. . . .

. . .

So I find that the work done was certainly of a professional quality and sufficient to represent and constitute reasonable and necessary services.

(Paper 6, Ex. 1, at 51-53).  The bankruptcy court also noted Ms. Regenhardt's substantial qualifications and determined that her fee was comparable to or lower than comparable professional fees in other case and the fees charged by other attorneys participating in this case.  (*Id.* at 54-55).

Creditors suggest that the facts of this case were not as complex as the bankruptcy court found them to be because the trustee for the Minh-Vu Hoang estate had submitted records in support of the motion for substantive consolidation demonstrating some commingling of funds.  Despite this evidence, the bankruptcy court's conclusion that the case was factually and legally complex is not clearly erroneous in light of the conflicting claims to

ownership of assets within Debtor's family, the convoluted nature of the underlying financial transactions, and the use of undocumented or marginally documented entities to hold title to property.

Creditors also argue that the fee requests by Debtor's counsel was unreasonably high, because they contend that Ms. Regenhardt's fee requests duplicated fees requested by Debtor's primary counsel, David Lynn.  In particular, Creditors object to charges for conferences between Debtor's attorneys.  While Creditors correctly point out that duplication of effort is a ground upon which a fee request can be denied or reduced, the bankruptcy court found that the services performed by both of Debtor's attorneys in this case were reasonable and necessary.  Because additional counsel were required to begin work during the course of the litigation and subject to a tight timetable, the bankruptcy court's finding that the conferences between attorneys to which Creditors object were reasonable was not clearly erroneous.

## V.  Conclusion

For the foregoing reasons, the bankruptcy court's December 19, 2006 Order will be affirmed.  A separate Order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge